F. S. Key, for the defendant, requested that the jurors might be asked whether they had formed and delivered any opinion upon the case.

THE COURT (DUCKETT, Circuit Judge, absent) refused to suffer the question to be asked, saying, that if the defendant wished to challenge the jurors for favor he might do so.

Mr. Alexander, a witness for the United States, upon being asked by the court what knowledge he had of the handwriting of the prisoner, said that he had, as a justice of peace, seized a book of accounts, which the prisoner acknowledged to be in his handwriting; that he examined the handwriting in the book, which he had in his possession only about fifteen minutes; that he also saw, in Mrs. Cassin's possession, a piece of writing which the prisoner acknowledged to be his; and had, since the prisoner was confined in jail, received two notes from the prisoner; that his only knowledge of the prisoner's handwriting was derived from those circumstances; that he could only swear that the check was like what he had seen.

Key & Dorsey, objected to this testimony, and cited McNal. Ev. 417, (Yates's opinion;) and Peake, Ev. 67.

Mr. Jones, contra, cited Esp. 144; 1 W. Bl. 384.

THE COURT said that Mr. Alexander's testimony was not evidence of the handwriting of the prisoner.

Verdict, not guilty.

## Case No. 15,485.

### UNITED STATES v. JOHNSON.

[2 Cranch, C. C. 21.] [1]

Circuit Court, District of Columbia. June Term, 1811.

#### BURGLARY—ENTRY OF STOREHOUSE.

A storehouse, not within the curtilage, but in which the clerk of the owner usually sleeps, is, in law, the mansion-house of the owner; and burglary may be committed therein.

This was an indictment for a burglary by breaking and entering the dwelling-house of Mr. Cassin. The building which the prisoner entered was a storehouse on a lot contiguous to the house in which Mr. Cassin lived; but not in the curtilage; his storekeeper, however, usually slept in it at night.

Morsell & Van Horne, for the prisoner, contended that this was not a dwelling-house; but if it was, it was the dwelling-house of the storekeeper, and should have been so charged in the indictment.

THE COURT (CRANCH, Chief Judge, absent), said that this was a dwelling-house, where a person sleeps at night, and is liable to be put in fear. The storekeeper was the servant or agent of Mr. Cassin. A person may have two dwelling-houses, in either of which burglary may be committed. 1 Hale, P. C. 556; Crown Cir. Comp. 207, 480. The sleeping in a house at night fixes its character, whether or not it be a dwelling-house; for a house which is only occupied and resided in during the day, is not considered a dwelling-house. 1 Hawk. P. C. c. 38, §§ 10–20. On the contrary, if a person takes an inn of court, or a room for the purpose of lodging, burglary may be committed therein.

Verdict, "Not guilty."

## Case No. 15,486.

### UNITED STATES v. JOHNSON.

[4 Cranch, C. C. 303.] [1]

Circuit Court, District of Columbia. March Term, 1833.

#### INDICTMENT — ASSISTING SLAVE TO RUN AWAY — SUFFICIENCY OF AVERMENTS.

In an indictment under the Maryland law of 1796, c. 67, § 19, for assisting, by advice, the transporting of a slave, whereby his owner was deprived of the service of his slave, it is not necessary to state what the advice was, nor how it assisted; nor is it necessary to state a criminal intent, nor that the accused knew he was a slave and intended to run away.

The indictment, which was founded on the Maryland act of 1796, c. 67, § 19, charged that the defendant [Abraham Johnson] did, on the 19th of April, 1833, "assist the transporting of a certain slave named Joseph Dozier, the property of Lucy R. Miller, of Washington county aforesaid, from the said county and district, by advice, and by conveying said slave in a gig from said county and district to the city of Baltimore, in the state of Maryland, then and there, thereby depriving the said Lucy Miller, the owner of said slave, of the service of her said slave, against the form of the statute," &c.

The jury having found the defendant guilty, his counsel, Mr. Jones, moved, in arrest of judgment: 1st. That the indictment is vague and uncertain in not stating what the advice was; nor the nature of it, by which the defendant assisted, &c., nor how the advice did assist. 2d. In not charging a criminal intent, nor that the defendant knew that Dozier was a slave, or intended to run away.

Mr. Key, contra. The indictment need not aver a knowledge or intent not mentioned in the description of the offence in the statute. Rex v. Sainsbury, 4 Term R. 457.

Mr. Jones, in reply. It is not sufficient to state the offence in the vague terms of the statute. The act must appear to have been unlawfully done. If the statute be taken literally, a man may be punished for giving a pass to his own slave. 1 Chit. 231.

---

But THE COURT (CRANCH, Chief Judge, doubting) overruled the motion, as well as the motion for a new trial, and fined the defendant $50.

======

## Case No. 15,487.

### UNITED STATES v. JOHNSON.

[1 N. J. Law J. 162.]

District Court, D. New Jersey.  May 14, 1878.

FUGITIVES FROM JUSTICE—INTERSTATE RENDITION —HABEAS CORPUS—JURISDICTION OF FEDERAL COURTS.

[The federal courts cannot, by habeas corpus, release a person held for trial in a state court, either on the ground that he was seized in another state in an illegal manner, and without compliance with the act regulating interstate rendition, or on the ground that he is held to answer for a different crime than that for which he was extradited.]

The prosecutor, in custody in the Essex county jail, sued out a writ of habeas corpus in the United States district court. He had been arrested in the District of Columbia, and brought under a requisition from the governor of New Jersey to this state. It was claimed the arrest was irregular, etc. The opinion sets forth the main facts.

A. Q. Keasbey and George M. Robeson, for prosecutor.

G. N. Abeel and Jacob Vanatta, for defendant.

NIXON, District Judge. I am quite clear that the facts presented by the return and the testimony in this case preclude the court from discharging the prisoner on these proceedings, whatever may be the opinion of the court in regard to the methods adopted by the agents of the state to obtain the possession of the body of the petitioner; and I should be sorry to say or do anything which might be construed into an approval of such methods and proceedings. It nevertheless appears affirmatively that the prisoner is detained by the legal authority of the state, to answer certain alleged violations of the criminal laws of New Jersey. The case falls within the provisions of section 753 of the Revised Statutes of the United States, which restricts the writ of habeas corpus to a case, where the prisoner in jail is in custody under or by color of the authority of the United States, or is committed for trial before some court thereof; or is in custody for an act done or omitted in pursuance of a law of the United States, or an order, process or decree of a court or judge thereof; or is in custody in violation of the constitution, or of a law or treaty of the United States; or unless when it is necessary to bring the prisoner into court to testify.

It appears by the petition, return and evidence that the prisoner was brought into the state of New Jersey from the District of Columbia by persons claiming to act under the constitution and laws of the United States, in regard to the extradition of fugitives from justice. The second section of article 4 of the constitution provides that a person charged in any state with treason, felony or other crime, who shall flee from justice and be found in another state, shall, on demand of the executive authority of the state whence he fled, be delivered up to be removed to the state having jurisdiction of the crime. The act of congress of February 12, 1793 (section 5278, Rev. St. [1 Stat. 302]), was passed to provide the machinery to carry into effect this provision, and it is therein made the duty of the executive of the state or territory to which a person charged with the crimes generally designated in the constitution has fled, upon lawful demand, to cause the fugitive to be arrested and surrendered up. The alleged fugitive in the present case being in the District of Columbia, the demand was made upon the chief justice of the supreme court, under section 843 of the Revised Statutes, relating to the District of Columbia, wherein that officer is directed to deliver up fugitives from justice in the same manner and under the same regulations as the executive authorities of the several states are required to do under the extradition act (Rev. St. §§ 5278, 5279). The demand of Gov. Clellan upon Chief Justice Carter was dated March 11, 1878, and was based upon the allegations that the prisoner stood charged with the crime of perjury, committed in the county of Essex, state of New Jersey; that he had fled from the justice of said state, and had taken refuge within the District of Columbia. It requested that the petitioner be delivered up to Robert Lang and Andrew J. McManus, who were authorized to receive and convey him to the state of New Jersey, there to be dealt with according to law.

The grounds alleged in the petition for the discharge of the prisoner were, that he was a citizen of Connecticut, residing at New Haven, in said state; that in the latter part of February last he left his home for the purpose of attending to certain business in the city of Washington in relation to legislation then pending before the congress of the United States under consideration by a committee of the senate; that he passed openly, in the daytime, through the state of New Jersey, and took rooms at the hotel in the city of Washington, where he remained from day to day in the open and public pursuit of the business objects for which his presence was required at the capital, and attended from time to time before the senate committee, and held conferences with different members of congress, concerning the business which he had in hand; that he was thus engaged on the 11th of March last, and in the evening of that day had retired to his bed as usual, when, at about midnight, he was awakened and disturbed by the entrance of three men into his room, who informed him that they had authority to arrest him, and